**UNITED STATES of America**

v.

**Clarence I. WEST, Jr., Appellant.**

**No. 73–1665.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 10, 1974.

Decided Sept. 11, 1974.

Bazelon, Chief Judge, filed a concurring opinion.

---

Richard M. Cooper, Washington, D. C. (appointed by this Court), with whom Jeremiah C. Collins, Washington, D. C. (appointed by this Court), for appellant.

Michael G. Scheininger, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed, John A. Terry and David M. Bullock, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, LEVENTHAL, Circuit Judge, and SOLOMON,* District Judge for the District of Oregon.

SOLOMON, District Judge.

The issue in this appeal is whether a thirteen-month delay between arrest and trial of a defendant in custody violated his Sixth Amendment right to a speedy trial.

On March 14, 1972, Clarence I. West, Jr., was arrested for possession of stolen mail. He had no funds for bail or counsel. He was confined. On June 19, an attorney was appointed.

West was arraigned on June 23 and his trial was set for August 2. On July 7, his attorney said that he would file a

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

motion to suppress; the court set the motion for hearing on the same day as the trial. On July 14, his attorney filed the motion, together with a supporting memorandum.

The judge vacated the hearing date of August 2 because he did not intend to hold court on that day. The motion to suppress was not called up for argument until November 6.[1] The motion was denied without opinion on December 12.

During this period West requested permission to visit his wife, who was seriously ill in the hospital. The motion was granted and he was permitted to visit his wife in the custody of an officer for a half hour every three days.

Within two days after the motion to suppress was denied, West's attorney informed the prosecutor and the trial judge's law clerk that West wanted a speedy trial. On February 8, 1973, the attorney notified the prosecutor and the trial judge personally of West's desire for a speedy trial.

On March 14, 1973, West moved to dismiss for want of a speedy trial. The government did not answer the motion until April 11. On April 16, the court denied the motion without opinion and set the trial for May 2, 1973. Defendant was convicted after a short trial. There were no complex issues of law or fact; the total transcript of testimony of the trial was only 54 pages.

The United States Attorney admits that at no time was there compliance with Rule 46(g) of the Federal Rules of Criminal Procedure. This rule requires the United States Attorney to furnish the district courts with bi-weekly reports of persons in custody for more than ten days. The rule also requires him to give

the reason that the defendant is being held.[2]

The right to a speedy trial is guaranteed by the Sixth Amendment. Even before that right was applied to the states, *see* Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), many states regulated the length of pretrial delay or detention by statute. *See, e. g.,* Cal. Penal Code, § 1382 (1872); Pa.Stat.Ann. tit. 19, § 781 (1860); Mass.Ann.Laws c. 277, § 72 (1784). Courts and bar associations have become increasingly concerned over the right to a speedy trial. American Bar Association, Standards Relating to Speedy Trial (Approved Draft, 1968); Second Circuit Rules Regarding Prompt Disposition of Criminal Cases (1971).

In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court held that the degree to which pretrial delay infringes Sixth Amendment rights must be analyzed in terms of the length of the delay, the reasons for the delay, the defendant's assertion of his right, and the prejudice to the defendant. The court said that each case must be decided on its own facts and declined to establish a constitutional rule requiring all criminal defendants to be brought to trial within a specified time. Nevertheless, the court noted that "[n]othing we have said should be interpreted as disapproving a presumptive rule adopted by a court in the exercise of its supervisory powers which establishes a fixed time period within which cases must normally be brought." 407 U.S. at 530, n. 29, 92 S.Ct. at 2192.

■■■ In this circuit a delay of more than one year between arrest and trial gives *prima facie* merit to a Sixth

---

1. In September, 1972, West's appointed attorney moved from the jurisdiction and a new attorney was appointed. The government does not contend that this change, not requested by the defendant, caused any delay.

2. 23 D.C.Code § 1303(h)(6) directs the District of Columbia Bail Agency to "prepare, in cooperation with the United States marshal for the District of Columbia and the

United States attorney for the District of Columbia, such pretrial detention reports as are required by Rule 46(h) [now 46(g)]." The U. S. Attorney has informed the court that his office "is not now, nor has it ever been, equipped to monitor the oft-changing status of detainees," and that the Bail Agency has never given the assistance directed by § 1303(h)(6) because of inadequate resources.

Amendment challenge. United States v. Ransom, 151 U.S.App.D.C. 87, 465 F.2d 672, 673 (1972); United States v. Hines, 147 U.S.App.D.C. 249, 455 F.2d 1317, 1332 (1972); Hedgepeth v. United States, 124 U.S.App.D.C. 291, 364 F.2d 684, 686 (1966). In cases tried after 1972, a delay of more than six months is "subject to inquiry and need for justification." United States v. Ransom, *supra,* 465 F.2d at 673, n. *. Because the delay in this case exceeded one year, the burden shifted to the government to justify the delay. If the government cannot justify the delay, the indictment must be dismissed. Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); United States v. Calloway, 164 U.S.App.D.C. ——, 505 F.2d 311 (1974).

Here none of the delay can be attributed to West. An attorney was not appointed until three months after West's arrest. West's motion to suppress was filed promptly but was not decided for five months after it was filed. West was brought to trial five months after the court denied his motion to suppress. The trial was short and required little pretrial preparation. All the witnesses were available. West was in jail and could have been produced for trial at any time. He did not seek a continuance.

West asserted his right to a speedy trial. He informally asked the prosecutor and the trial judge for a speedy trial in December, 1972, and again in February, 1973. He also filed a formal motion to dismiss for lack of a speedy trial on March 14, 1973, one year after his arrest and six weeks before his trial.

■ Although West was not prejudiced at his trial by the pretrial delay, he was in jail for thirteen months between his arrest and trial. Extended pretrial detention oppresses the accused and destroys the presumption of innocence. *See* J. Skelly Wright, J., concurring in part and dissenting in part in Smith v. United States, 135 U.S.App.D.C. 284, 418 F.2d 1120, 1123, 1124 (1969); Barker v. Wingo, *supra,* 407 U.S. at 532, 533, 92 S.Ct. 2182.

■ The trial judge wrote no opinion and gave no reason for denying the motion to dismiss for lack of a speedy trial. In its brief the government emphasized congestion and scheduling problems in the District Court as reasons for the delay. Even though calendar congestion is a more neutral reason for delay than a deliberate attempt by the government to postpone the trial, institutional delays must still be charged to the government. Barker v. Wingo, *supra,* 407 U.S. at 531, 92 S.Ct. 2182. Speedy trials limit plea bargaining, encourage rehabilitation, and reduce an accused's opportunity to escape or commit crimes while on bail. Lengthy pretrial incarceration causes social dislocation and public expense and pressures defendants, even if innocent, to plead guilty. *Id.* at 519, 520, 532, 92 S.Ct. 2182. The public interest in speedy trials can only be protected by imposing sanctions on the government when the criminal justice system is responsible for unjustifiable pretrial delays.

The dangers of pretrial delays were increased by the failure to prepare the pretrial detention reports required by Rule 46(g). This rule serves to supply frequent pressure on our legal institutions to provide defendants in custody with speedy trials. Because these defendants are often both indigent and illiterate, and are usually represented by overburdened attorneys, it is unlikely that they will supply such pressure themselves.

The failure to comply with Rule 46(g) may have been the result of a jurisdictional impasse between two already overworked agencies. *See* note 2, *supra.* Moreover, whatever the justification, the required reports were not prepared. Had the rule been complied with, both the prosecution and the trial judge would have been regularly reminded of West's continued incarceration. Moreover, the preparation of the required biweekly "statement of reasons why the

defendant is still in custody" would have provided both the United States Attorney and the court with the incentive to minimize unjustifiable delays.[3]

In Smith v. United States, *supra,* a defendant was confined for thirteen months before trial. The government gave no explanation for the delay. This Court said:

> . . . This incarceration without trial for 13 months is all too long, especially when no reason for it appears.
>
> . . . . . .
>
> We have considered whether the time has come to adopt a rule that for persons in detention, a delay prior to trial of more than one year, not attributable to the defense, automatically calls for dismissal of the indictment, due to prejudice to the person. Certainly there must be some limit on such delay . . .
>
> There is at present, however, an unusual strain upon prosecutorial and judicial resources. The legislature has been apprised of the problem, and we may appropriately accommodate our doctines to permit time for provision of resources necessary to dispose of criminal cases without denial of fundamental rights. For this reason, we have decided not to rule that prejudice to the person by detention for a year automatically leads to dismissal. 418 F.2d at 1121, 1122.

This warning was given in 1969. Now, five years later, we have another case in which a defendant was in custody for thirteen months before trial, with none of the delay attributable to him. Congress has had ample time to provide funds to remedy this condition. We can no longer "accommodate our doctrines" at the expense of incarcerated defendants in the hope that additional resources may someday be made available.

We hold that the prejudice to the person of a defendant in custody for thirteen months between arrest and trial for a non-violent offense requires dismissal of the indictment when the issues of fact and law are not complex, and when court congestion rather than the acts of the defendant caused the delay.

■ Here pretrial delay infringed West's Sixth Amendment right to a speedy trial. The government has not met its burden of justifying the delay.

The judgment of the District Court is reversed and the case is remanded with instructions to dismiss the indictment.[4]

Concurring Statement of Chief Judge BAZELON:

I fully concur in Judge Solomon's well reasoned opinion. I simply wish to add a word, however, about the government's failure to comply with Rule 46(g) of the Federal Rules of Criminal Procedure. The failure to file pretrial detention reports represents an unwarranted rejection of a mechanism designed to insure that the cases of incarcerated defendants are not ignored or forgotten in the administration of criminal justice.

Rule 46(g) provides in pertinent part that:

> The attorney for the government shall make a bi-weekly report to the court listing each defendant . . . who has been held in custody pending indictment, arraignment or trial for a period in excess of ten days. . . . As to each defendant so listed the attorney for the government shall make a statement of the reasons why the defendant is still held in custody.

The Rule is intended to serve as an automatic means by which the attention of the U. S. Attorney and the trial court is focused on lagging cases in which defendants are incarcerated and, of particular importance, on the reasons why

---

3. The filing of a bi-weekly statement of the reasons as required by Rule 46(g) would also lessen the need in speedy trial cases to engage in post-hoc speculation on the causes and justification for the delays.

4. In view of our disposition of the case, we do not reach the *Miranda* and Fourth Amendment issues also raised in the appeal.

each defendant is still in custody.[1] Compliance with the Rule would help both the trial court and the U. S. Attorney to fulfill their joint responsibility "for the expeditious trial of criminal cases." Barker v. Wingo, 407 U.S. 514, 527 fn. 27, 92 S.Ct. 2182, 2190, 33 L.Ed. 2d 101 (quoting Hodges v. United States, 408 F.2d 543, 551 (8th Cir. 1969)). For instance, Rule 46(g) reports would encourage trial judges with congested calendars to transfer cases of incarcerated defendants to other judges. Similarly, with regular Rule 46(g) reports the U. S. Attorney's office could legitimately be expected to place priority on the preparation of those cases in which defendants had been incarcerated for extended periods of time.[2]

In this case, the failure of the responsible government officials to file the required reports left West with the entire burden of calling attention to his need for a speedy trial.[3] As the court today makes clear, this is a burden that the majority of defendants can simply not be expected to bear. Because they are unschooled, most may not even be aware of their rights under the Sixth Amendment, much less of the complex doctrines that have grown out of the courts' interpretation of that amendment. The failure to file Rule 46(g) reports greatly increases the chances that some defendants, because indigent and ignorant, will effectively be denied the protection of the Sixth Amendment. This is fundamentally at odds with the spirit both of the Constitution and of elementary fairness. As the Supreme Court noted in Barker v. Wingo, "The right to 'a speedy . . . trial' . . . is not to be honored only for the vigilant and the knowledgeable." 407 U.S. at 527, fn. 27, 92 S.Ct. at 2190 (quoting Hodges v. United States, 408 F.2d 543, 551 (8th Cir. 1969)). Nor, might I add, should it be honored only for those defendants fortunate enough to have dedicated and competent counsel.

1. As noted in Judge Solomon's opinion, page 255 *supra*, the D.C.Code provides that the District of Columbia Bail Agency as well as the U. S. Attorney play a role in the preparation of the Rule 46(g) reports. The fact that the responsibility may be a shared one of course makes the absence of the reports no more justifiable.

2. In Barker v. Wingo, the Supreme Court recognized the special prejudice suffered by incarcerated defendants:

The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time.
407 U.S. 532–533, 92 S.Ct. 2193 (1972).

3. Only *after* the period of West's incarceration did the U. S. Marshal and the Clerk's Office of the District Court begin their practice, pursuant to Local District Court Rule 2–7(e), of preparing a biweekly jail list. Rule 2–7(e) provides in part that:

At all arraignments and on every other Monday thereafter the United States Marshal shall provide each judge with the names of all defendants before him that are being held in jail, the reasons for this confinement, and the length of this confinement.

On inquiry, this court was informed that the jail lists that are actually prepared indicate the names of defendants held, their status (e. g. the date on which trial has been set), and their dates of indictment and commitment. Currently, the lists are prepared by the Clerk's Office of the District Court.

In two respects these jail lists appear to be inadequate substitutes for the reports mandated by Rule 46(g). First, they do not fulfill Rule 46(g)'s requirement that there be provided "a statement of reasons why the defendant is still held in custody." Secondly, we have learned on inquiry that the U. S. Attorney's Office—required to *prepare* the reports under Rule 46(g)—does not even receive copies of the Rule 2–7(e) jail list from the Clerk's Office. The U. S. Attorney is in a peculiarly well-suited position to hurry cases toward trial but is apparently still without the regular notice which Rule 46(g) compels him to take as to which cases most need expediting.